**Charles J. DUNN, Plaintiff,**

v.

**Tim E. McKINNEY, Sheriff, and Fremont County, Wyoming, Defendants.**

**No. C85–0146–B.**

United States District Court, D. Wyoming.

Nov. 22, 1985.

Stephan L. Pevar, Staff Counsel, Denver, Colo., Daniel H. Blythe, Cheyenne, Wyo., for plaintiff.

Bruce A. Salzburg and Elizabeth Z. Smith, Freudenthal, Salzburg & Bonds, Cheyenne, Wyo., for defendants.

## ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

BRIMMER, Chief Judge.

The above-entitled matter came before the Court pursuant to plaintiff's motion for

---

partial summary judgment. The Court, having reviewed the pleadings and the evidence offered and now being fully advised in the premises, FINDS and ORDERS as follows:

Plaintiff Charles Dunn, a former Fremont County Deputy Sheriff, contends that he was forced to resign for violating the following rule enacted by Sheriff Tim McKinney, which prohibits deputies from:

> voluntarily maintaining or establishing associations or dealing with known criminals except in the line of duty and with the knowledge of the Sheriff.

Plaintiff contends that this rule is unconstitutional on its face because it is vague and overbroad, and that in other words it was not drafted in a sufficiently narrow manner to protect the right of freedom of association guaranteed to all citizens by the First Amendment to the United States Constitution.

Defendants counter that the rule is not vague or overbroad, especially as applied to Mr. Dunn, that enforcement of the rule did not violate any protected First Amendment rights, and also that Mr. Dunn lacks standing to raise the question of the rule's unconstitutionality. The Court is not convinced by any of these arguments.

First, it is clear that one of the reasons Mr. Dunn was forced to resign was because he violated Sheriff McKinney's "anti-association" rule by maintaining a friendship with one Pete Stamper. The Sheriff's November 26, 1984 letter, advising Mr. Dunn that he must resign or be terminated, cited Dunn's relationship with Stamper and the resulting violation of the rule as one of two reasons for his termination. Also, Sheriff McKinney has admitted that it was plaintiff's violation of the rule that "pushed him over the edge" and caused him to fire Mr. Dunn. *McKinney deposition* at 73. It is clear that if the rule infringes upon First Amendment rights, Mr. Dunn's rights were affected by it.

It is well-established that a citizen whose rights are infringed by an ordinance is free to challenge that ordinance on the grounds that it is facially vague or overbroad. As recently as 1983, when faced with a claim that a California loitering ordinance was vague and overbroad, the United ed States Supreme Court allowed a person arrested under that statute to attack the statute not only as being unconstitutional as applied to him, but also as being unconstitutionally vague and overbroad on its face. In *Kolender v. Lawson*, 461 U.S. 352, 359, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903 (1983), the Court cited *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) in "reaffirming the validity of facial challenges in situations where free speech or free association are affected...." Since Mr. Dunn's rights of free association were affected by the rule, he has standing to attack it on its face.

The Court believes that the First Amendment protects social associations such as the one between Mr. Dunn and Mr. Stamper. This Court agrees with the Maryland District Court:

> It is too late in the day to doubt that this freedom of association extends only to political or conventional associations and not to the social or unorthodox. *Burns v. Pomerleau*, 319 F.Supp. 58, 65 (D.Md. 1970). *See also Griswold v. Connecticut*, 381 U.S. 479, 483 [85 S.Ct. 1678, 1681, 14 L.Ed.2d 510] (1965).

Plaintiff was free to develop associations under protection of the First Amendment, absent a constitutionally valid prohibition. Even though there was valid reasoning behind its promulgation, Sheriff McKinney's rule is not a valid prohibition. The Court does not imply that a narrowly drafted rule proscribing close relationships with felons by police officers could not pass constitutional scrutiny, because it has long been recognized that individuals who choose to engage in a government occupation may be subject to restrictions on the exercise of their First Amendment rights. *CSC v. Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). This is particularly true of law enforcement officers who are held to extremely high codes of public con-

duct and discipline. *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1975). However, it is also clearly established that if a law "interferes with the right of free speech or of association," the law must be subjected to strict scrutiny. *Hoffman Estates, supra,* 455 U.S. at 499, 102 S.Ct. at 1193.

▮ Sheriff McKinney's rule, which prohibits maintaining or establishing any associations with known criminals, is surely unconstitutionally vague. The Supreme Court has stated that vague laws which impinge on constitutional rights are void because they offend important values:

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of (those) freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" ... than if the boundaries of the forbidden areas were closely marked.' *Grayned v. City of Rockford,* 408 U.S. 104, 108 [92 S.Ct. 2294, 2298, 33 L.Ed.2d 222] (1972).

It is not clear what the word "criminal" in Sheriff McKinney's rule is supposed to mean. Although the dictionary definition of "criminal" includes anyone who has broken a law, including a minor traffic ordinance, in his deposition, the Sheriff denies that this is the case.

Q. Now, again, the rule uses the word "criminal" instead of "felon." Is it your understanding the word "criminal" includes someone who is convicted of any crime, including a traffic violation? Is that person a criminal?

A. Not to me he isn't, no.

Q. He's not a criminal?

A. Not to me.

McKinney Deposition, p. 32.

When asked how his deputies would know this, the Sheriff responded: "By asking, I guess"; he conceded that the rule did not define "criminal." *Id.* at 33. Moreover, the Sheriff could not define how serious a crime must be in order for the rule to apply. When asked how deputies were supposed to gauge their conduct based on the rule, he answered: "By common sense, I guess." *Id.* at 34. "By common sense I guess," is not a constitutionally precise standard.

The Sheriff also could not define the word "known"; he wavered between whether it means a convicted criminal, a convicted criminal who the community knows was convicted, or just an "un-savory type individual" with a bad reputation. *Id.* at 28. The Sheriff also had trouble defining just what types of "associations" or "dealings" were prohibited by the rule, and stated several unwritten exceptions and qualifications to the rule. This Court has held that "[m]en of common intelligence are not required to guess at the meaning of an ordinance." *Love v. Mayor, City of Cheyenne,* 448 F.Supp. 128, 133 (D.Wyo. 1978). Because even Sheriff McKinney could only guess at the meaning of his own rule, the Court must conclude that it is unconstitutionally vague.

The rule is also overbroad. "A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned,* 408 U.S. at 114, 92 S.Ct. at 2302. If Sheriff McKinney's rule were taken at face value, and "criminal" really meant anyone who has violated the law, it is not difficult to contemplate the possible consequences. If

a deputy's spouse received a traffic ticket, the Sheriff could order the deputy to stop associating with the "criminal" spouse. There is no end to the types of "associations or dealings" the Sheriff could prohibit under a literal interpretation of his rule. The Court agrees with Sheriff McKinney's own statement that the rule "is pretty broad", and concludes that, on its face, the anti-association rule must be struck down as constitutionally overbroad.

The Court makes no finding here regarding whether plaintiff would have been fired anyway, for example, for insubordination, without considering the anti-association rule. Those are matters of fact to be decided by a jury. However, it is clear, as a matter of law, that the anti-association rule itself cannot withstand Constitutional scrutiny. If plaintiff was fired as a result of enforcement of this rule, as a matter of law his constitutional rights were violated. Indeed, the court is surprised that legal counsel advised the Sheriff to adopt such a vague and overreaching rule involving such a basic right as freedom of association. The McKinney anti-association rule must be struck down as unconstitutionally vague and overbroad. Therefore, it is

ORDERED that plaintiff's motion for partial summary judgment be, and the same hereby is, granted.