**Tony TILLMAN, Plaintiff,**

v.

**CITY OF WEST POINT, MISSISSIPPI, Defendant.**

**Civ. A. No. 1:95CV198–D–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

Sept. 10, 1996.

proposition addressed here.

Jim Waide, Tupelo, Mississippi, for Plaintiff.

Hal S. Spragins, Oxford, Mississippi, for Defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Presently before the court is the motion of the defendant for the entry of summary judgment on its behalf. Finding that the motion is well taken, the court shall grant the same.

## I. FACTUAL BACKGROUND [1]

The plaintiff Tony Tillman was employed by the defendant City of West Point as a police officer from on or about May 5, 1987. The defendant West Point suspended him on or about May 16, 1995, and later terminated his employment on March 12, 1996. Both the suspension and termination apparently arise out of the plaintiff's friendship with Robert Rupert, who is currently serving a sentence in the Mississippi State penitentiary in Parchman, Mississippi. In 1994, the West Point police department began investigating Rupert as a potential suspect in the murder of local man, Carlos Carr. The investigating officers were also aware of Tillman's friendship with Rupert.

In August of 1994, West Point police chief Bill Ladd asked Tillman to take a polygraph examination concerning Tillman's relationship with Rupert. Tillman initially agreed, but upon advice of counsel later refused to take the exam unless it was administered by persons outside of the West Point police department. The investigation of Rupert and his association with Tillman continued.

---

1. In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Rather, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. The court's factual summary is so drafted.

On May 9, 1995, Chief Ladd suspended Tillman without pay "based upon the status of the current internal investigation," and informed Tillman that a recommendation would be made to the West Point Board of Selectmen to terminate his employment with the city. A related hearing was set for May 16, 1995. Tillman employed counsel, who appeared at the meeting on his behalf. At this hearing, the Board entered an executive session to discuss the matter, and heard from Chief Ladd, the plaintiff and his counsel. Plaintiff's counsel objected to the board entering executive session to hear the request, and asked that the meeting remain open. The board remained in executive session, and did not take any formal action on the request at this hearing. An article concerning this portion of the board meeting subsequently appeared in the local paper. *Officer called before board,* DAILY TIMES LEADER (West Point, Mississippi), May 18, 1995, at 1.

The plaintiff subsequently took a polygraph examination in June of 1995. A report of the examination was submitted to the city in August of 1995. It was the opinion of the examiner that the plaintiff was deceptive with regard to his negative answers to questions concerning involvement in drug dealing in West Point and in the murder of Carlos Carr. In February of 1996, the plaintiff was informed by letter that his discharge from the police department would be recommended to the board, and that the recommendation would be heard by the board at the next regularly scheduled meeting on March 12, 1996. Tillman appeared at the March 12 meeting without counsel, and after being asked if he had anything to say, responded that he did not.[2] The board of selectmen then voted unanimously to terminate the plaintiff's employment. This action followed.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen,* 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj,* 968 F.2d 500, 503 (5th Cir.1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Matagorda County v. Russell Law,* 19 F.3d 215, 217 (5th Cir.1994).

## III. THE PLAINTIFF'S CLAIMS

### A. DEPRIVATION OF PROCEDURAL DUE PROCESS

An individual's "right to hold specific private employment and to follow a chosen profession free from government interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Vander Zee v. Reno,* 73 F.3d 1365, 1370 (5th Cir.1996) (quoting *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959)); *see also Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) (noting "liberty" within the meaning of Fourteenth Amendment "denotes not merely the freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life ..."). However, mere injury to reputation or the impairment of future

---

**2.** "When I arrived at the meeting, someone asked me whether I had anything to say. I told them that I did not have anything to say, since my attorney was not present and I did not know what I was supposed to talk about." Exhibit "1" to Plaintiff's Response, Affidavit of Tony Tillman.

employment prospects fails to independently state constitutionally cognizable claims. *Siegert v. Gilley,* 500 U.S. 226, 233–34, 111 S.Ct. 1789, 1793–94, 114 L.Ed.2d 277 (1991); *State of Texas v. Thompson,* 70 F.3d 390, 392 (5th Cir.1995). When interrelated, however, they can in tandem create a claim:

> [D]amage to an individual's reputation as a result of defamatory statements made by a state actor, accompanied by an infringement of some other interest, is actionable under § 1983.

*Thompson,* 70 F.3d at 392 (citing *Paul v. Davis,* 424 U.S. 693, 710–12, 96 S.Ct. 1155, 1164–66, 47 L.Ed.2d 405 (1976)). In this case, the plaintiff claims that he was denied a meaningful name-clearing hearing in violation of this due process right to pursue his chosen profession. In order to establish his claim, Mr. Tillman must prove all of the following elements:

1) that he was discharged;

2) that defamatory charges were made against him in connection with the discharge;

3) that the charges were made public;

4) that the charges were false;

5) that he requested a name-clearing hearing in which to clear his name;

6) that the request was denied; and

7) that no meaningful public hearing was conducted before the discharge.

*Gillum v. City of Kerrville,* 3 F.3d 117, 121 (5th Cir.1993); *Arrington v. County of Dallas,* 970 F.2d 1441, 1447 (5th Cir.1992); *Rosenstein v. City of Dallas,* 876 F.2d 392 (5th Cir.1989). The parties do not dispute that the plaintiff was discharged in this case, but it appears that the parties' agreement ends there.

### 1. THE FALSITY OF THE CHARGES

▮ The plaintiff claims that false charges were made against him in two respects. First, he claims that false statements were made against him in a newspaper article concerning his suspension hearing of May 16, 1995. Particularly, the plaintiff directs the court to the first sentence of the article, which reads "[a] West Point police officer has been charged with violating departmental procedures by associating with a known criminal and refusing a polygraph." Exhibit "F" to the Plaintiff's Response, *Officer called before board,* DAILY TIMES LEADER (West Point, Mississippi), May 18, 1995, at 1. The article goes on to identify that officer as the plaintiff. This statement cannot serve as a basis to entitle the plaintiff to a name-clearing hearing, as the plaintiff does not dispute that it is true. After looking to the evidence before the court, it appears without serious doubt that the City of West Point did in fact make these charges against the plaintiff. *See, e.g.,* Exhibit "C" to the Plaintiff's Response, Letter from Bill Ladd; Exhibit "E" to the Plaintiff's Response, Transcript of the May 16, 1995 Hearing. The plaintiff does indeed dispute the veracity of the charges themselves, but the newspaper article does not state that the charges are accurate. Rather, it only states that the plaintiff *has been charged* with certain conduct. As there is no genuine issue of material fact as to the truth of this statement, it cannot serve as a "false and defamatory charge" which would entitle the plaintiff to a name-clearing hearing.

### 2. WERE THE REMAINING CHARGES DEFAMATORY?

Secondly, the plaintiff asserts that numerous defamatory statements were made against him by two law enforcement investigators, Bill Gibson and Larry Butler. Before the court are affidavits from three individuals—Willie Harris, Tiffany Jefferson and J.J. McFarland. Each of the affiants state that they were questioned by Gibson and Butler sometime during 1994 about the plaintiff Tillman. The relevant portions of these affidavits are as follows:

> Gibson and Butler came to my home and told me that they wanted to question me about Carlos Carr's death, and Tony Tillman and Robert Rupert being involved in drugs.

Exhibit "4" to the Plaintiff's Response, Affidavit of J.J. McFarland.

> Sometime during 1994, two law enforcement officers (I believe one of them was named Butler) came to me and asked me if I knew if Tony Tillman was involved in

drugs, and if I knew if Tony Tillman was involved in the death of Carlos Carr. The way I was questioned made me think that they believed that Tony was guilty, and they wanted me to say that I knew it was true.

Exhibit "3" to Plaintiff's Response, Affidavit of Tiffany Jefferson.

The officers asked me questions making me think that they thought that Tony was involved in drugs or some type of illegal activity. They wanted me to give a statement saying I knew the same thing.... The officer's questions made me think that they were claiming that Tony was involved in drugs with Robert Rupert, and that Tony was involved in the murder of Carlos Carr.

Exhibit "2" to Plaintiff's Response, Affidavit of Willie Harris.

 Initially, the court notes that language's confinement in a question does not prevent that language from being classified as defamatory. "The form of the language used is not controlling and a defamatory meaning may be conveyed by means of a question." *Lutz v. Watson,* 136 A.D.2d 888, 889, 525 N.Y.S.2d 80 (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 111, at 780 (5th Ed.1984)).

A question can conceivably be defamatory, though it must reasonably be read as an assertion of a false fact; inquiry itself, however embarrassing or unpleasant to its subject, is not an accusation.

*Partington v. Bugliosi,* 56 F.3d 1147, 1157 (9th Cir.1995); *Chapin v. Knight–Ridder, Inc.,* 993 F.2d 1087, 1093 (4th Cir.1993). Nevertheless, the language must indeed be defamatory. The precise questions asked of these affiants by the investigating officers is not before the court. While such may not be absolutely necessary, it is most difficult to glean a defamatory meaning without at least some idea of what was said. Even taking the facts contained in these affidavits as true, the court cannot find sufficient evidence that would support a jury finding that the officers' questions in this matter were anything be-

yond mere inquiry. That the affiants were left with an "impression" that the investigators "believed" these charges against the plaintiff to be true is not sufficient. That the officers may have expressed an opinion as to the plaintiff's culpability is also not enough. *Meridian Star, Inc. v. Williams,* 549 So.2d 1332, 1335 (Miss.1989) (citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974)); *but see Johnson v. Delta–Democrat Pub. Co.,* 531 So.2d 811, 814 (Miss.1988) (Opinion statements actionable if they clearly and unmistakably imply allegation of undisclosed false or defamatory facts as the basis for opinion) (citing *Ferguson v. Watkins,* 448 So.2d 271, 276 (Miss.1984)). The affiants do not state that the officers' questions were equivalent to a false statement of fact, i.e., that the officers asserted within their questions that the charges *were in fact* true. The undersigned is of the opinion that the plaintiff, when faced with a properly supported motion for summary judgment, has failed to come forward with sufficient evidence that would lead a reasonable juror to find that false and defamatory statements were made in connection with his discharge. There is no genuine issue of material fact as to this matter and the defendant is entitled to the entry of a judgment as a matter of law on this claim of the plaintiff.

## B. FIRST AMENDMENT RIGHT OF ASSOCIATION

In order for the plaintiff to have a viable claim under § 1983, it is axiomatic that he possess a right, privilege or immunity secured "by the Constitution and [Federal] laws." 42 U.S.C. § 1983. Indeed, it is the violation of such a right, privilege or immunity that is actionable under the civil rights statute. In this case, Tillman alleges that he was terminated from his employment as a West Point police officer "because he exercised his freedom of association rights as guaranteed by United States Constitution Amendment One." Plaintiff's Complaint, ¶ XII.[3] A necessary first step in this court's

---

**3.** Apparently, the defendant terminated the plaintiff's employment at least in part pursuant to

policy of the West Point police department, which states:

analysis, then, should be to determine if the plaintiff actually has a constitutionally protected interest in the association involved in this case.

■ Contrary to the assertions of the plaintiff in this matter, the First Amendment does not contain a "generalized right of 'social association.' " *City of Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1051 (5th Cir.1996). Rather, the United States Supreme Court has determined that the First Amendment encompasses two categories of protection in this regard: 1) "intimate association"; and 2) "expressive association." *City of Dallas*, 490 U.S. at 23–25, 109 S.Ct. at 1594–95; *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544, 107 S.Ct. 1940, 1945, 95 L.Ed.2d 474 (1987); *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d 462 (1984). The right of "expressive association" protects the rights of individuals to associate "for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *City of Dallas*, 490 U.S. at 24, 109 S.Ct. at 1594, 104 L.Ed.2d at 25 (quoting *Roberts*, 468 U.S. at 617–18, 104 S.Ct. at 3249–50). There is no evidence before the court to indicate that this type of associational protection is that which the plaintiff claims has been violated by the defendant, and the plaintiff has not even asserted such.[4]

■ The right of "intimate association," also referred to by some courts as the right of "private association," is an entirely different animal. Its purpose is to protect against unjustified government interference with an individual's right to enter into and maintain certain intimate human relationships, and is protected as an element of personal liberty. *City of Dallas*, 490 U.S. at 24, 109 S.Ct. at 1594–95, 104 L.Ed.2d at 25 (quoting *Roberts*, 468 U.S. at 617–18, 104 S.Ct. at 3249–50); *Wallace*, 80 F.3d at 1051; *Louisiana Deb. and Lit. Ass'n v. City of New Orleans*, 42 F.3d 1483, 1493 (5th Cir.1995). This associational right most closely fits the contours of the plaintiff's claim in this cause. The relationships to which courts have extended this protection include that of marriage, the bearing of children, child rearing and education, and the cohabitation with familial relatives. *Wallace*, 80 F.3d at 1051 (citing *Rotary Club*, 481 U.S. at 545, 107 S.Ct. at 1945–46). A bright line determination of familial relationship does not establish the right, however, and other relationships may suffice. Particularly, relationships can give rise to a protected right if they are of the kind:

> that presuppose "deep attachments and commitments to the necessary few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life."

*Id.* (citing *Rotary Club*, 481 U.S. at 545, 107 S.Ct. at 1946); *see, e.g., Louisiana Deb. and Lit. Ass'n*, 42 F.3d at 1493 (association with private club found sufficient). Whether the

---

Association: Members and employees shall avoid regular or continuous associations or dealings with persons under criminal investigation or indictment, or who have a reputation in the community of the Department for present involvement in felonious or criminal behavior, except as necessary to the performance of official duties, or where unavoidable because of personal relationships of the officers. Defendant's Exhibit I, West Point Police Department Policy Manual, Section 2.21.15. The plaintiff has not made a challenge to the facial validity of this regulation, and therefore the issue is not before the court. Such an attempt by the plaintiff in this case could lead to a question of standing. Nonetheless, it appears that the regulation could indeed be void on the ground that it is unconstitutionally vague or over broad. *See, e.g., Dunn v. McKinney*, 622 F.Supp. 259, 261

(D.C.Wyo.1985) (finding similar prohibition void). For example, would an officer be prohibited from having a regular association with one who merely had a "reputation in the community" for the involvement in the "criminal" behavior of driving her automobile in excess of the speed limit?

4. Both the plaintiff and defendant, however, provide the court with a legal analysis that courts have traditionally employed to address claims involving the infringement of an individual's right to association for political purposes—i.e., "political patronage" cases. *See, e.g., Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980); *Garcia v. Reeves County, Texas*, 32 F.3d 200, 204 (5th Cir.1994); *Coughlin v. Lee*, 946 F.2d 1152, 1158 (5th Cir.1991).

right does in fact extend to relationships outside of the familial context depends upon the extent to which those attachments share qualities distinctive to family relationships. *Id.* at 1494 (enumerating factors considered in determination of associational rights of an organized club).

In this case, the plaintiff claims that he was fired because of his friendship with Robert Rupert. The full extent of the evidence before this court is that the plaintiff and Mr. Rupert were only "friends," and that they had known each other for quite a long time. Nothing indicates that they were "best friends," or had more than occasional contact with one another. In sum, there is nothing before the court to indicate that they shared the requisite affinity to create for the plaintiff a constitutionally protected associational right under the First Amendment. *See White v. Florida Hwy. Patrol,* 928 F.Supp. 1153, 1159 (M.D.Fla.1996). As the court finds that the evidence is insufficient to establish a protectable First Amendment associational right in the relationship between the plaintiff and Mr. Rupert, the court need not address whether West Point's termination of the plaintiff's employment was an unconstitutional infringement of his First Amendment right as a public employee. The defendants are entitled to the entry of a judgment as a matter of law on this claim of the plaintiff.

## VI. CONCLUSION

"When faced with a properly supported motion for summary judgment, a non-movant, such as plaintiff, cannot merely 'sit back and wait for trial.'" *Hinton v. Teamsters Local Union No. 891,* 818 F.Supp. 939 (N.D.Miss.1993) (quoting *Page v. De Laune,* 837 F.2d 233, 238 (5th Cir.1988)). In this case, the plaintiff has failed to come forward with sufficient evidence in support of the fact that defamatory charges were made against him in connection with his discharge. As the plaintiff has insufficient evidence in support of this fact, he cannot prevail on his claim that he was entitled to a name-clearing hearing under the due process clause of the Fourteenth Amendment to the United States Constitution.

 As to the plaintiff's freedom of association claim, this court is of the opinion that friendships can indeed rise to such a level as to create a protected intimate First Amendment association under the circumstances proscribed by the United States Supreme Court. However, not all friendships will do so, and nothing in this case suffices to raise a genuine issue of material fact as to whether such a friendship existed between the plaintiff and Robert Rupert.

There are no genuine issues of material fact as to the plaintiff's claims, and the defendant is entitled to the entry of a judgment as a matter of law. A separate order in accordance with this opinion shall issue this day.