**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No.96-60643
(Summary Calender)

_____

TONY TILLMAN,

Plaintiff-Appellant,

versus

CITY OF WEST POINT,
MISSISSIPPI

Defendant-Appellee.

_____

Appeal From the United States District Court
for the Northern District of Mississippi
(No. 1:95-CV-198-S-D)

_____

February 17, 1997

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

This is an appeal by a former city policeman who challenges the district court's grant of summary judgment in favor of Defendant-Appellee City of West Point, Mississippi (the City). Plaintiff-Appellant Tony Tillman claims that he was deprived of his

_____

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

constitutional right to a name-clearing hearing under the Due Process Clauses of the Fifth and Fourteenth Amendments and that he was deprived of his First Amendment right of association. With regard to the first constitutional claim, the district court found that Tillman had failed to establish entitlement to a name-clearing hearing under the Due Process Clauses on two grounds: (1) The newspaper article that reported that Tillman had been charged with violating the City police department's procedures by associating with a known criminal and by refusing a polygraph was not false because the City had in fact asserted such charges; and (2) the questions posed to citizens by law enforcement officers investigating whether Tillman was involved in drug trafficking or in a local murder were not rhetorically defamatory in nature, but rather were properly interrogatory and at most implied a professional opinion or belief that Tillman could have been engaged in criminal conduct. The court found that Tillman's First Amendment claim failed because his association with one Robert Rupert, an old friend who had fallen into a life of crime, was not an association protected by the First Amendment.

In conducting our de novo review, we carefully combed the record on appeal, evaluated the arguments of counsel for both parties as set forth in their respective briefs to this court, and considered the relevant facts and the applicable law; and reached the firm conclusion that the district court correctly analyzed the issues, applied the appropriate law, and reached the correct result

2

in dismissing both of Tillman's constitutional claims.  We add, however, that the district court's grant of summary judgment on Tillman's due process claim is bolstered by another central fact, perhaps not fully articulated by the district court.

As the City points out in its brief, Tillman admits explicitly that he did maintain a long-standing relationship with one Robert Rupert, an individual who was a known criminal, even though such an association was strictly prohibited by the City police department's own rules.  Indeed, much of Tillman's argument in this case is devoted not to denying his rather blatant association with Rupert but to attempting to explain why this continuing relationship was justified in this particular instance, and even to asserting that the association was protected by the First Amendment.  In so doing, however, Tillman demonstrates that he cannot satisfy one of the fundamental elements necessary to state an actionable claim that he was deprived of his limited constitutional right to a name-clearing hearing, i.e., that the charges brought against him were false.[1]  Although we acknowledge that Tillman might possibly show that the City's other charge —— that he refused a polygraph —— was false,[2]

---

[1] See Gillum v. City of Kerrville, 3 F.3d 117, 121 (5th Cir. 1993); Arrington v. City of Dallas, 970 F.2d 1441, 1447 (5th Cir. 1992); Rosenstein v. City of Dallas, 876 F.2d 392, 396 (5th Cir. 1989).

[2] Tillman apparently only refused to take a City administered polygraph, but he was willing and in fact did submit to a polygraph administered by a third party, which he eventually failed.

Tillman still is not entitled to relief on this fact alone because the other and far more important charge of consorting with a known criminal is, as we have explained above, admittedly true.

We sense that Tillman and his counsel have either misunderstood or mischaracterized the interplay between the important constitutional protections he claims to assert in this action and the solemn responsibilities he undertook in accepting a position as a police officer, a guardian of the public's safety and security. When an individual accepts the privilege and responsibility of a position of public authority, such as that of a police officer, he will enjoy new associations with his fellow citizens that he did not enjoy before; at the same time, however, he also must relinquish some associations he previously enjoyed, particularly when those associations involve individuals who are the subject of law enforcement scrutiny. This trade-off is in no way unique to police officers. Others who assume important public roles find their associational rights properly altered and in some respects curtailed. To cite just one obvious example, lawyers who become judges can no longer associate with other lawyers with the same freedom they enjoyed before they assumed their privileges and duties on the bench. In short, Tillman implicitly but knowingly waived his right of free association, to the extent such right might have allowed association with police characters like Rupert, when Tillman commenced a career in law enforcement. In so doing he agreed to abide by the rules and regulations of the police force,

4

and is held to have understood that he had to change or curtail the exercise of some rights of ordinary, private citizens, including aspects of free association.

Finally, we note that the City adduced ample evidence of the serious harm Tillman's association with Rupert inflicted on its police department's internal functioning and integrity as well as its public reputation in the community. This clearly demonstrates why the City established its rules limiting police officer's association with criminals in the first place and why its interests in enforcing such restrictions far outweigh any limited associational rights Tillman could possibly assert here. This is not diminished by Tillman's lame rationale that his association with Rupert sprang from a lofty motive of rehabilitating Rupert and influencing him to turn from a life of crime — none of which was communicated to or approved by Tillman's superiors in advance.

For all these reasons and for those set forth in the district court's thoughtful and well-reasoned Memorandum Opinion, the district court's grant of summary judgment dismissing Tillman's claims is

AFFIRMED.