**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-60014
(Summary Calendar)

FRANCES MAE WALKER,

Plaintiff-Appellant,

versus

MARK HENDERSON, in his individual
capacity; JIM EDWARDS, in his individual
capacity,

Defendants-Appellees.

Appeal from United States District Court
for the Northern District of Mississippi
(1:97-CV-214-P)

November 16, 2000

Before JOLLY, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

The issue before us is whether the district court erred in dismissing the 42 U.S.C. § 1983 (1994) claim of Frances Mae Walker ("Walker") against Mark Henderson and Jim Edwards ("Henderson") pursuant to FED. R. CIV. P.12(b)(6) for failure to plead facts with particularity sufficient to establish a constitutionally protected violation of her right to intimate association. For the following reasons, we affirm the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

FACTUAL AND PROCEDURAL BACKGROUND

Walker is an African-American woman who lived on the same rural road in Clay County as Henderson. During the time that Walker and Henderson lived on this road, Henderson was, and remains, a Mississippi Highway Patrol officer. Walker was the only African-American residing in the community and alleges that Henderson, a white man, was incensed by her presence. Walker alleges that Henderson's racial intolerance prompted an intense campaign to drive her from her residence by unrelentingly harassing her and arbitrarily stopping her family and friends when they tried to visit. Walker claims that Henderson's behavior continued until she was ultimately forced to move in March 1996.

Walker filed suit against Henderson on July 8, 1997, alleging violations of her rights under the Fourth and Fourteenth Amendments. Subsequently, Henderson filed a motion to dismiss alleging that Walker had failed to plead facts that would overcome his affirmatively pled defense of qualified immunity. The district court allowed Walker to amend her complaint. She added Jim Edwards as a defendant and included a First Amendment freedom of association claim in an attempt to make a more factual and detailed statement in response to Henderson's motion to dismiss. Henderson then filed another motion to dismiss, and the court granted it. Walker now appeals to this court.

DISCUSSION

I.      Standard of Review

We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6). Hall v. Thomas, 190 F.3d 693, 696 (5th Cir. 1999). "This disfavored motion should not be granted unless 'it appears beyond a doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80

(1957)). Therefore, the district court must liberally construe the complaint in the plaintiff's favor and assume that all facts pleaded are true. Hall, 190 F.3d at 696.

II.        § 1983 Pleading Requirements

When the complaint invokes § 1983, the plaintiff "must allege 'with particularity all material facts on which [she] contends [she] will establish [her] right to recovery, . . . .'" Morrison v. City of Baton Rouge, 761 F. 2d 242, 244-45 (5th Cir. 1985) (quoting Elliot v. Perez, 751 F. 2d 1472, 1482 (5th Cir. 1985)). This heightened pleading requirement does not, however, place a burden on the plaintiff to "fully anticipate the defense [of qualified immunity] in [her] complaint at the risk of dismissal under Rule 12." Schultea v. Wood, 47 F.3d 1427, 1430 (5th Cir. 1995) (Schultea II). The plaintiff need only plead more than mere conclusory allegations. Id. (standing by the court's view of the application of FED. R. CIV. P. 8 to § 1983 cases as stated in Elliot, 751 F.2d at 1479).

In so doing, the plaintiff should strive to state her best case. Schultea v. Wood, 27 F. 3d 1112, 1118 (5th Cir. 1994). The liberal pleading and amendment standards of the Federal Rules of Civil Procedure are designed to allow claimants an opportunity to state such a cognizable case, if it can be made. Id. However, courts are not mandated to allow plaintiffs "to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold. . . . At some point a court must decide that a plaintiff had a full and fair opportunity to make [her] case; [and] if, after that time, a cause of action has not been established, the court should dismiss the suit." Id. (citing Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986)).

II.        § 1983 and Qualified Immunity

In a § 1983 suit, we must make two separate inquiries to determine whether a public official is entitled to qualified immunity. Williams v. Bramer, 180 F. 3d 699, 702 (5th Cir. 1999). First we

3

must discern whether the plaintiff has alleged the violation of a clearly established constitutional right. Id. (citing Siegert v. Gilley, 500 U.S. 226, 231-32, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991); Lampkin v. City of Nacogdoches, 7 F. 3d 430, 434 (5th Cir. 1993)). Upon finding that a constitutional right has been violated, we then inquire whether the government official's actions were objectively reasonable. Williams, 180 F. 3d at 702 (citing Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).

"We define this reasonableness in the light of the legal rules that were clearly established at the time the actions were taken." Williams, 180 F. 3d at 702 (citing Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). First, we address whether Walker's pleadings were stated with sufficient particularity to demonstrate that her right of intimate association with her family and friends was clearly established at the time Henderson allegedly engaged in harassing behavior, and whether Walker's pleadings were, therefore, adequate to withstand dismissal under FED. R. CIV. P. 12(b)(6). We do not consider whether Henderson's conduct was objectively reasonable unless we find that the district court erred in its analysis of the clearly established constitutional right prong.

III.    Intimate Association

The seminal Supreme Court decision addressing the constitutional right of intimate association is Roberts v. U.S. Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). In Jaycees, the Court reasoned that its decisions "have referred to constitutionally protected 'freedom of association' in two distinct senses." Id. at 617. One set of decisions concludes that "choices to enter into and maintain certain *intimate human relationships* must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our

4

constitutional scheme." Id. (emphasis added). The other line of cases recognizes "a right to associate for the purpose of engaging in those activities protected by the First Amendment...." Id. at 618.

Freedom of association in the former sense has historically been couched in terms of family. Marriage, childbirth, raising and educating children, and cohabitation with one's relatives are all intimate associations that the Court has very willingly recognized as worthy of constitutional protection. Id. (citations omitted). From the nature of these family relationships, the Court gleaned its basis for determining when other relationships may warrant treatment as constitutionally protected intimate associations.

Initially the inquiry must focus on whether by its nature the relationship at issue involves "deep attachments and commitments to necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." Id. at 620. Several factors elucidate the types of attachments and commitments that the Court would consider constitutionally protected intimate associations. They include "such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." Id.

These guideposts establish certain general parameters. As such, the Constitution imposes constraints on the State's power to control the selection of one's spouse that would be inapplicable to regulations affecting one's choice of fellow employees. Id. "Between these poles. . . lies a broad range of human relationships that may make greater or lesser claims to constitutional protection from particular [State] incursions. . . ." Id. Accordingly, determining which intimate associations merit constitutional limits on State intrusion "entails a careful assessment of where that relationship's

5

objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments."[1]  Id.

Following Jaycees, the Court again addressed the right of intimate association stating that "freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill or Rights." Board of Dir. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 545, 107 S. Ct. 1940, 95 L. Ed. 2d 474 (1987).  Recognizing that such relationships take various forms, the Court stated that it had not "attempted to mark the precise boundaries of this type of constitutional protection." Id.  Moreover, the Court unambiguously reasoned that such protection is not restricted to relationships among family members.  See id.  The Court later qualified this view, however, expressing doubt that the "Constitution recognizes a generalized right of 'social association.'" City of Dallas v. Stanglin, 490 U.S. 19, 25, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989).

Courts in this circuit have asserted that whether the intimate association right includes relationships beyond the familial context depends upon the extent to which the persons share qualities distinctive to family relationships.  Tillman v. City of West Point, 953 F. Supp. 145, 151 (N.D. Miss. 1996) (citing Louisiana Debating & Literary Ass'n v. City of New Orleans, 42 F.3d 1483, 1494 (5th Cir. 1995)).  This rationale is consistent with the Jaycees' factors analysis and underscores the inappropriateness of using "bright line determination[s] of familial relationships" to establish the

---

[1]  The framework Jaycees articulated to determine whether a particular relationship rises to the level of a constitutionally protected intimate association sparked some criticism.  One such commentator found the framework problematic not only because it "fail[ed] to make the necessary connection between familial and nonfamilial relations[,]" but also because the Court gave no instruction regarding the relative importance of any factor.  It also did not detail the fine contours of the right to intimate association. Neal E. Devins, *The Trouble With Jaycees*, 34 CATH. U. L. REV. 901, 910 (1985) (noting that the highly unstructured framework of Jaycees necessitates ad hoc determination of which associations warrant constitutional protection).

6

constitutional right of intimate association. Tillman, 953 F. Supp. at 150. Nonetheless, basing the intimate association analysis on "qualities distinctive to family relationships" can be challenging because "the definitional boundaries that limit the types of associations that constitute 'family relationships' are blurred." Kipps v. Caillier, 205 F.3d 203, 206 (5th Cir. 2000).

III.     Analysis

Because Walker's First Amendment right of intimate association claim was initially asserted in her amended complaint, it and the subsequent pleadings are particularly relevant to our inquiry. The amended complaint states in paragraphs V through VII:

> During the time complained of, Plaintiff suffered from various illnesses and/or injuries and either did not have access to a vehicle or, at other times, was physically unable to drive. Plaintiff relied upon family members and friends to come visit her to help take care of her and to transport her whenever necessary.
> When the Plaintiff's family members or friends, almost all of whom were black, would come down the road Plaintiff lived on, the Defendants would frequently get into their vehicle and follow such persons and either stop them or wait until they were leaving to stop them. On other occasions, the Defendants would come back down the road and stop black persons who were visiting the Plaintiff.
> Henderson and Edwards would pull over vehicles of friends and family members of the Plaintiff for absolutely no reason. They would, on occasion, make occupants get out of the car and search the car without any probable cause or permission.

In paragraph XV(b), Walker asserts that these facts created Henderson's legal liability, because "[t]he Defendant intentionally interfered with Plaintiff's First Amendment rights to freely associate with friends and family members, by intimidating such persons into not coming to Plaintiff's house."

After answering that Walker failed to state a claim upon which relief could be granted and that the complaint failed to state a cause of action cognizable under § 1983, Henderson moved to dismiss pursuant to those grounds. Walker's response merely attached a copy of her amended complaint as an exhibit and stated that "the amended complaint is fact specific and clearly outlines the factual basis

7

of her cause of action against Defendant. . . . Plaintiff has adequately identified the legal and factual bases for her complaint."

There is caselaw in this circuit that establishes family relationships as clearly subject to constitutional protection. Kipps, 205 F.3d at 206 ("[A]lthough *it is clear that 'family relationships' are subject to constitutional protection*, the definitional boundaries that limit the types of associations that constitute 'family relationships' are blurred.") (emphasis added). In addition, the Supreme Court has reasoned that friendships may also merit constitutional protection. See Rotary Club, 481 U.S. at 545 (announcing that "we have not held that constitutional protection is restricted to relationships among family members"). Walker, however, undergirded her contention that she and her family and friends shared a constitutionally protected intimate association on an Eleventh Circuit case.[2]

In this court, the precedent of our sister circuits is not binding in an analysis of clearly established law under the doctrine of qualified immunity. See Boddie v. City of Columbus, 989 F.2d 745, 748 (5th Cir. 1993). Thus, Walker failed to cite any controlling authority sufficient to demonstrate the intimate association right that she claimed was clearly established. But caselaw alone cannot solve Walker's quandary because her pleadings failed to set forth facts with the degree of specificity necessary to fit within the framework of relevant authority.

Noting this deficiency and the very general and conclusory manner in which Walker pled the purportedly relevant facts of her claim, the district court was unpersuaded that Walker had met the pleading requirements of Schultea II and Elliot. After giving Walker a full and fair opportunity to

---

[2] See Wilson v. Taylor, 733 F.2d 1539 (11th Cir. 1984)(stating that "[w]e . . . align ourselves with recent cases holding that the [F]irst [A]mendment freedom of association applies . . . to purely social and personal associations"). This court notes that Wilson was decided less than one month before the Supreme Court decided Jaycees.

8

state a cognizable claim, the court opined that neither Walker's first complaint, amended complaint, nor her response to Henderson's motion to dismiss addressed the type of relationship that Walker had with her family and friends. Thus, the court held that Walker's complaint on its face did not present a factual basis to support her allegation that she and her family and friends shared the "deep attachments and commitments" requisite to establish a constitutionally protected right of association. Relying on Tillman, the court further reasoned that merely stating that some of her visitors were family did not allege facts demonstrating a protected intimate association, because "a bright line determination of familial relationship does not *establish* the right [of intimate association]." Tillman, 953 F. Supp. at 150 (emphasis added).

Walker's failure to show that her right of intimate association with her family and friends was clearly established during the period of Henderson's alleged harassment is fatal in light of his qualified immunity defense. Having been given several opportunities to state her best case, we conclude that Walker can prove no set of facts in support of her claim that Henderson violated a constitutionally protected right that would entitle her to relief.

## CONCLUSION

Accordingly, we hold that the district court did not err in granting Henderson's motion to dismiss for failure to state a claim and AFFIRM its decision.

AFFIRMED.

9