IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-10254
_____

SIR WILLIAMS,

Plaintiff-Appellant,

versus

MICHAEL L. BRAMER; JAY C.
ANGELINO; CITY OF DALLAS
POLICE DEPT.,

Defendants-Appellees.
_____

Appeal from the United States District Court for the
Northern District of Texas
_____
July 22, 1999
Before REAVLEY, JOLLY, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY:

In this case, Sir Williams alleged, inter alia, that two police officers, Michael L. Bramer and Jay C. Angelino, violated his constitutional rights. He alleges that Bramer choked him twice--once while conducting a search of his mouth and then again in response to William's complaints about the first choking. He further alleges that, sometime after the choking occurred, Angelino arrived on the scene and, after telling him that he was free to go, used a racial epithet while addressing him.

Williams sued the officers under 42 U.S.C. § 1983 and a district court granted summary judgment in favor of the officers, finding that they were entitled to qualified immunity. The

district court concluded that Williams failed to show evidence of injury and therefore he could not recover for the choking. To the extent that the second choking was allegedly motivated solely by malice, we disagree with the district court's formulation of injury. We therefore reverse the district court's ruling on this issue.

With respect to the use of the racial epithet, the district court did not address the issue. However, because the issue before us is solely a question of law--whether the alleged conduct of the officer amounts to a violation of Williams's right to equal protection--we address the issue on appeal. We hold that, in order to establish an equal protection violation, a plaintiff may not merely assert that an officer used a racial epithet. While the use of the epithet is compelling evidence of racial animus, which establishes that the officer's conduct may be motivated by race, the plaintiff must still show that the officer engaged in specific conduct that denied him equal protection of the laws.

In this case, Williams has presented no evidence that the officer harassed his or impeded his liberty in any other way. We therefore affirm the summary judgment ruling with respect to Williams's equal protection claim.

I

Officers Bramer and Angelino are employed by the City of Dallas ("Dallas"). On April 5, 1995, at approximately 8:15 p.m.,

2

Bramer was in the Roseland Homes housing projects to exchange information with Officer Michael Hackbarth regarding suspected drug activity in the area. According to Bramer, he told Hackbarth that he would cover an alley where several citizens had reported that drugs and weapons were being sold out of the back of a house.

Bramer drove to the alley directly behind the suspected drug location where he observed the plaintiff, Williams, sitting in a parked vehicle with his lights off. In his affidavit, Williams stated that he was waiting to take friends to the store. When Bramer drove into the alley, Williams indicated that he moved his car beside a vacant house to allow the police car to pass. Bramer stopped and got out of his car. He approached Williams, shining a flashlight at Williams, and asking Williams to step out of his vehicle.

After Williams stepped out, what occurred is disputed by the two parties. Bramer contends that Williams "immediately became very verbally abusive towards me." In addition, although both parties agree that Bramer searched two areas--Williams's car and Williams's body--they do not agree on the specifics of the search. Bramer argues that he first searched Williams and then searched the car. Williams, on the other hand, argues that Bramer patted him down, searched his car, and then returned to search his mouth.

When Bramer conducted a search of Williams's car, according to Williams, he searched the ashtray, dome light, and sun visor.

3

Bramer stated that he only searched the side floorboard and area immediately around the driver's seat of the vehicle for safety reasons.[1]

With respect to the body search, there is a marked difference between Bramer's and Williams's accounts. Bramer states that, after patting him down, he noticed that Williams was talking as if there were something in his mouth. Based on previous experience with suspects stopped in drug locations, he suspected that Williams might have been holding crack cocaine in his mouth. He therefore executed a search of Williams's mouth. In so doing, he placed his hand on Williams's chest, asked Williams to open his mouth, and then looked inside. When he did not observe anything in Williams's mouth, he proceeded to search Williams's car.

According to Williams, after patting him down and then searching the car, Bramer appeared frustrated and returned to Williams, grabbing him by the throat and telling him: "Let me see what's under your tongue." When he lifted his tongue, Bramer started choking him and told him to "spit it out." He had problems breathing, was unable to swallow, and began to feel dizzy. When Bramer loosened his grip, Williams told Bramer that internal affairs was going to get a report on him, whereupon Bramer began

---

[1]On appeal, Williams does not challenge the district court's holding that Bramer executed a legitimate search of the car.

4

choking him again.   At this point, Angelino arrived at the scene[2] and Bramer ceased choking him.   Bramer and Angelino both denied that Williams was ever choked.

Angelino obtained Williams's identification and conducted a computer search.  The computer search came up clean, and Williams was then released.  Williams requested the police supervisor's name and number and the names and badge numbers of the officers on the scene.  According to Williams, Angelino replied:

> You can't call the supervisor because I'm not giving you his name or number and we are not going to tell you our names either boy.   You can only have our badge numbers . . . [ ] nigger.

Angelino and Bramer both deny that Angelino made this comment.

Williams filed a civil rights action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights under the Fourth and Fourteenth Amendments were violated by Bramer, Angelino, and Dallas.   The district court granted summary judgment to the defendants and Williams timely filed his appeal.

## II

We review the district court's grant of summary judgment de novo.  Guillery v. Domtar Industries, Inc., 95 F.3d 1320, 1326 (5th Cir. 1996).   In so doing, we apply the same summary judgment standard as that applied by the district court.   Id.   We first

---

[2]According to Bramer, Angelino arrived at the scene with his partner, Officer Jack Hurd.  According to Williams, Hurd arrived with Bramer.  There is no testimony from Hurd in the record.

consider the applicable law to ascertain the material factual issues. <u>King v. Chide</u>, 974 F.2d 653, 656 (5th Cir. 1992). We then review the evidence bearing on those issues, viewing the facts and inferences to be drawn in a light most favorable to the non-moving party. <u>Lemelle v. Universal Mfg. Corp.</u>, 18 F.3d 1268, 1272 (5th Cir. 1994). Summary judgment is proper "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In this case, the district court held that the defendants were entitled to qualified immunity with respect to all of Williams's claims. We therefore review the summary judgment ruling in the light of the standard for whether a public official is entitled to qualified immunity. In a § 1983 suit, we must make two separate inquiries. We must first determine whether the plaintiff has alleged the violation of a clearly established constitutional right. <u>Siegert v. Gilley</u>, 500 U.S. 226, 231-32 (1991); <u>Lampkin v. City of Nacogdoches</u>, 7 F.3d 430, 434 (5th Cir. 1993). If we find that a constitutional right has been violated, our second inquiry is whether the governmental official's actions were objectively reasonable. <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987). Qualified immunity shields an official performing discretionary functions from civil damages liability, provided his actions meet

the test of objective legal reasonableness. Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). We define reasonableness in the light of the legal rules that were clearly established at the time the actions were taken. Anderson, 483 U.S. at 639. Objective reasonableness is a matter of law for the courts to decide, not a matter for the jury. Mangieri v. Clifton, 29 F.3d 1012, 1015-16. However, underlying historical facts may be in dispute that are material to the reasonableness determination. Id. at 1016.

III

On appeal, we address whether qualified immunity applies to two claims. The first claim is that Bramer violated Williams's Fourth Amendment rights by subjecting him to excessive force. The second claim is that Angelino violated his equal protection rights under the Fourteenth Amendment by using a racial epithet while conversing with him. We address each claim in turn.

A

Williams argues that Bramer used excessive force when Bramer choked him while searching his mouth. Before addressing the specifics of Williams's argument, we note that the relevant facts are hotly contested here. Because the district court determined the case on the basis of a summary judgment motion, we must accept the allegations in Williams's affidavit as true. Thus, although Bramer has testified that he never choked Williams, we must for purposes of this appeal assume that he did. We must further assume

that Bramer choked Williams during his search of Williams's mouth and then again, in response to Williams's comment that he intended to report Bramer.

In Johnson v. Morel, we restated the test for qualified immunity in the context of excessive force: a claim for excessive force in violation of the Constitution requires (1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable. 876 F.2d 477, 480 (5th Cir. 1989) abrogated on other grounds, Harper v. Harris County, Tex., 21 F.3d 597 (5th Cir. 1994).

The district court concluded that Williams had failed to make out the first element necessary under Johnson. In Johnson, we stated that in order to make out a due process violation, the plaintiff must show that he suffered a "significant injury." The Supreme Court subsequently overruled the significant injury prong in the context of a claim of excessive force under the Eighth Amendment, Hudson v. McMillian, 503 U.S. 1, 8 (1992) and, applying Hudson, we have concluded that the plaintiff is no longer required to show a significant injury in the Fourth Amendment context either. Harper v. Harris County, Tex., 21 F.3d 597, 600 (5th Cir. 1994).

Nevertheless, we do require a plaintiff asserting an excessive force claim to have "suffered at least some form of injury,"

8

Jackson v. R. E. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993). Furthermore, we have shaped our analysis so that we do not permit a cause of action for every contact between a citizen and a police officer:

> In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation. When the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is de minimis for constitutional purposes.

Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir. 1996). In determining whether an injury caused by excessive force is more than de minimis, we look to the context in which that force was deployed. "[T]he amount of injury necessary to satisfy our requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances." Id.

What constitutes an injury in an excessive force claim is therefore subjective--it is defined entirely by the context in which the injury arises. In this case, Williams alleges that he suffered the same physical injury from two separate encounters with Bramer: first, while conducting a search of Williams's mouth, and, second, after Williams threatened to report him. In his affidavit, Williams made the following factual allegations: (1) he was choked on two occasions by officer Bramer; (2) while being choked, he

9

could not breathe or swallow, and experienced dizziness; and (3) the incident caused him to cough and to have to catch his breath.[3]

We therefore must determine whether, in the context in which the force was used, Williams's loss of breath and dizziness amount to injury sufficient to allege a constitutional violation. Furthermore, because the contexts in which the two chokings occurred differ, we must assess whether Williams suffered a legally cognizable injury with respect to each choking.

With respect to the alleged choking that occurred while Bramer attempted to search Williams mouth, we must conclude that it is not a cognizable injury. Whenever a detainee is physically searched by an officer, a physical confrontation inevitably results. In such circumstances, we cannot conclude that the alleged injury that resulted from the contact at issue here--that is, fleeting dizziness, temporary loss of breath and coughing--rises to the level of a constitutional violation.

With respect to the second choking, however, we do find that the alleged injury is sufficient to assert a constitutional violation. Based on the facts that we must accept as true on appeal, Bramer's second choking of Williams was motivated entirely by malice. Bramer was therefore not legitimately exercising force in the performance of his duties as an officer. In this context,

---

[3]Williams also seeks damages for "mental distress" from embarrassment, mental anguish, and humiliation. There is no evidence in the record to substantiate this alleged injury.

10

we hold that, although suffering from dizziness, loss of breath, and coughing are not significant injuries, combined, they qualify as a cognizable injury when the victim is maliciously assaulted by a police officer (as alleged by Williams).  We therefore must hold that Williams has established a genuine issue of material fact regarding whether he sustained an injury based on the factual allegations contained in his affidavit.

Having concluded that, for purposes of his § 1983 claim, Johnson suffered a cognizable injury from the second choking, we must turn to the second and third Johnson elements--whether the injury resulted from the use of force that was clearly excessive and whether that force was objectively unreasonable.  In this case, with respect to the second choking, both elements are clearly met.  There can be no justification for Bramer's allegedly malicious choking of Williams.  On the basis of the summary judgment evidence before us, we must therefore conclude that Bramer choked Williams in a manner that was excessive and objectively unreasonable.

Because Williams has succeeded in presenting evidence that establishes a § 1983 claim for excessive force, the district court erred in granting summary judgment in favor of the defendants.  We therefore reverse the district court's ruling with respect to this claim.

B

11

Williams's second claim is that Angelino's use of a racial epithet while addressing him amounts to violation of his right to equal protection under the Fourteenth Amendment. The district court did not address this issue in its summary judgment ruling.[4] Because the issue before us is solely a question of law--whether the alleged facts amount to a constitutional violation--we address the issue. We conclude that the evidence presented by Williams is insufficient to make out an equal protection violation, because Angelino's alleged use of the racial epithet did not amount to conduct, such as harassment, that would deny Williams of equal protection of the laws.

Under our qualified immunity analysis, we turn first to whether Williams alleged a violation of a constitutional right. The Equal Protection Clause directs that persons similarly situated should be treated alike. Plyler v. Doe, 457 U.S. 202, 216 (1982). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a

---

[4]Williams pled an equal protection claim in his complaint, and the defendants challenged the sufficiency of the evidentiary support for this claim in their motion for summary judgment. Williams did not reply to that argument in his response to the motion for summary judgment and the district court did not address the issue at all in its memorandum order granting summary judgment. On appeal, Williams now argues that the district court erred in dismissing this claim. Although Williams did not respond to the defendants' motion for summary judgment, Williams did include an affidavit that included what is arguably a sufficient evidentiary basis for making his equal protection claim.

protected class." Johnson, 876 F.2d at 479 (citing Washington v. Davis, 426 U.S. 229, 247-48 (1976)). For the case at hand, we must determine whether the conduct at issue amounts to discrimination in violation of the Equal Protection Clause. To that end, we briefly restate the nature of Williams's allegations.

According to Williams, Bramer stopped choking him just before Angelino arrived on the scene. There is therefore nothing in the record that links Bramer's conduct to Angelino's. We therefore find that Williams's equal protection claim is completely unrelated to the choking incident involving Bramer. Upon arriving, Angelino ran a background check on Williams and released him. Then, in response to a demand for his name and badge number, Angelino responded not just by providing Williams with his badge number but also by using a racial epithet when addressing him.[5] Simply put, therefore, we must determine whether an officer discriminates against a citizen when he uses a racial epithet when responding to an inquiry from such citizen.

Johnson involved allegations that an officer used his vehicle to push Johnson's broken down car over a bridge while continuously transmitting racial slurs and epithets over his vehicle's loud

_____

[5]There is no evidence in the record that would indicate that Angelino withheld information from Williams that Angelino was obligated to provide. Williams has neither alleged nor attempted to show, that he was entitled to either the names of the officers or the phone number of the officers' supervisor. Nor has Williams alleged that his ability to file a complaint against the officers was in any way impeded by Angelino's conduct.

13

speaker. The occupants of the car testified that the officer disregarded their safety when he pushed the car down a decline at an unsafe speed for the vehicle. After pushing the car to a safe resting place, the officer confronted Johnson and, using racist comments, humiliated and harassed him before handcuffing and arresting him. We held that, because the district court had not commented on Johnson's equal protection claim, Johnson was entitled to prove that his right to equal protection was abridged. Although we did not explicitly address the merits of Johnson's claim, we noted that: "[t]he elimination of racial discrimination remains at the heart of the Fourteenth Amendment. The Constitution does not tolerate intentional police harassment of racial minorities." Johnson, 876 F.2d at 479.

Other circuits have interpreted our opinion in Johnson to stand for the principle that racial epithets coupled with harassment are sufficient to support a cause of action under the Equal Protection Clause. Simons v. O'Brien, 77 F.3d 1093, 1094 n.2 (8th Cir. 1998); Smith v. Thornburg, 136 F.3d 1070, 1089-90 (6th Cir. 1998) (Clay, J., dissenting). We have been hesitant to conclude, however, that the use of racial epithets alone are sufficient to assert a cause of action under the Fourteenth Amendment. In an earlier case, Ware v. Reed, 709 F.2d 345, 352 (5th Cir. 1983) we declined to address this "thorny" issue, noting instead that epithets alone may not be sufficient:

14

Query whether the use of such language, rancid and denigrating as it certainly is, standing alone, amounts to the kind of violation contemplated by the Fourteenth Amendment Equal Protection Clause and entitled to redress under § 1981. <u>Compare</u> <u>Howard v. National Cash Register Co.</u>, 388 F.Supp. 603 (S.D.Ohio 1979) and <u>Johnson v. Hackett</u>, 284 F.Supp. 933 (E.D.Pa. 1969) with <u>Harris v. Harvey</u>, 605 F.2d 330, 338 (7th Cir. 1979) (collecting cases) and <u>City of Minneapolis v. Richardson</u>, 239 N.W.2d 197, 200 (1976); <u>Cf.</u> <u>Ex parte, Hamilton</u>, 376 U.S. 650 (1964) (per curiam); <u>Allen v. City of Mobile</u>, 331 F.Supp. 1134, 1150 (S.D.Ala. 1971), <u>aff'd</u>, 466 F.2d 122 (5th Cir. 1972) (per curiam) (personnel in the police department instructed to refrain from the use of racially derogatory words); <u>see generally</u> Delgado, <u>Words That Wound: A Tort Action for Racial Insults, Epithets, and Name Calling</u>, 17 Harv.C.R.-C.L.L.Rev. 133, 159-65 (1982).

<u>Id.</u> at n.12.

We hold today that an officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation. When leveled against a citizen by a police officer, a racial epithet, by its nature, calls attention to the citizen's racial identity. The use of an epithet is therefore strong evidence that a comment or action is racially motivated. The question in the equal protection context, however, is not just whether the conduct is racially motivated but also whether that action deprives a person of "equal protection of the laws." U.S. Const. amend. XIV. Where the conduct at issue consists solely of speech, there is no equal protection violation.

In this case, Angelino neither played a part in physically abusing Williams nor engaged in any activity that would constrain

Williams's freedom--in fact, he was the officer who told Williams he was free to go. The only objectionable conduct on Angelino's part was his use of the racial epithet in responding to Williams's request for names and badge numbers. Angelino's conduct is therefore markedly different from that of the officer in Johnson. Based on Williams's allegations, Angelino made only one, isolated comment and he in no other way impinged on Williams's rights. We cannot conclude that his alleged conduct therefore rises to the level of harassment.[6]

                                VII

To sum up, Williams argues on appeal that the district court erred in granting summary judgment with respect to two separate claims--an excessive force claim and an equal protection claim-- involving two different officers. We agree with the district court that Williams failed to assert a legal injury with respect to the choking that allegedly occurred while Bramer searched his mouth. We hold that the district court erred, however, when it held that Williams failed to allege a legal injury when he claimed that Bramer maliciously and intentionally choked him a second time

_____

[6]Although we hold that Williams does not have a cause of action with respect to the alleged use of this epithet, we do not leave him without redress. He may still file a complaint with the police force. The best way to take care of allegations that a police officer is racially intolerant in his association with members of the community is by instituting appropriate disciplinary measures within the police force, not by resorting to the judicial process.

16

because he complained about the mouth search. The alleged second choking raises a genuine issue of material fact that cannot be resolved on summary judgment. We therefore REVERSE the district court's ruling with respect to Williams's claim against Bramer. With respect to Williams's equal protection claim, however, we find no error. Williams argues that an officer's use of a racial epithet, standing alone, is enough to make out an equal protection violation. We hold today that it is not. A plaintiff must demonstrate that an officer using a racial epithet engaged in some specific conduct, such as harassment, that deprived the plaintiff of equal protection of the laws. The mere utterance of a racial epithet is not enough by itself to amount to an equal protection violation. Because Angelino's conduct does not amount to harassment, we AFFIRM the district court's ruling with respect to

Angelino and REMAND for further proceedings consistent with this opinion.

REVERSED in part; AFFIRMED in part; and REMANDED.