Dana M. HERMAN, Plaintiff,

v.

CITY OF SHANNON, MISSISSIPPI, et al., Defendants.

Civ.A. No. 1:02CV309MD.

United States District Court,
N.D. Mississippi,
Eastern Division.

Dec. 16, 2003.

Michael D. Cooke, Michael D. Cooke, Attorney, Iuka, MS, for plaintiff.

Mark Nolan Halbert, Phelps Dunbar, Tupelo, MS, for defendants.

## ORDER

MILLS, District Judge.

This cause comes before the court on the motion of defendants City of Shannon, Mississippi, Tommy Edwards and Terry Westbrook for summary judgment. [21–1] Plaintiff Dana M. Herman has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

On July 28, 2000, City of Shannon, Mississippi police officer Johnny Patterson ordered a truck driven by Amos McCoy to pull over pursuant to a traffic stop.[1] McCoy refused to comply, and a police pursuit involving Patterson's patrol car and also a patrol car occupied by Shannon police officers Tommy Edwards and Terry Westbrook ensued. Plaintiff, a passenger in McCoy's vehicle, contends that she repeatedly urged McCoy to comply with police orders to pull over but he refused to do so. Ultimately, the officers chased McCoy's vehicle down a county road, whereupon McCoy attempted to turn his vehicle around. The two patrol cars positioned themselves on each end of McCoy's vehicle; McCoy was facing a patrol car occupied by Edwards and Westbrook. Edwards and Westbrook exited their vehicles and, with their pistols drawn and pointed at McCoy, ordered him to exit the vehicle.

Officer Edwards advanced to within three feet of the truck, and Edwards testified in his deposition that McCoy then "gunned" the engine of his truck and drove towards him. The truck struck Edwards on the right side of his body but did not injure him. At this point, Edwards fired two shots into the vehicle, one of which passed through McCoy's arm and entered plaintiff's leg.[2] Plaintiff jumped out of the passenger side of the vehicle and fell down a ditch. As McCoy was speeding away from the officers, Officer Westbrook fired four shots at the rear of the truck, but none of the shots struck McCoy. The officers summoned medical assistance for plaintiff, and she spent one night in the hospital, following which she was released along with antibiotics for treatment of the gunshot wound in her leg. On August 23, 2002, Plaintiff filed suit in this court, seeking recovery against the City of Shannon and officers Westbrook and Edwards under both state and federal law.

The court considers first plaintiff's federal claims against defendants. In determining whether defendants' motion to dismiss the federal claims should be granted, the threshold question is whether plaintiff has established genuine fact issues regarding any constitutional violation by officers Edwards or Westbrook. In her complaint, plaintiff alleges a lengthy list of constitutional violations, most of which are plainly inapposite to the facts of this case. For example, plaintiff alleges violations of the First, Fifth, Six and Eighth Amendments, but in the court's view, the only federal claim which even arguably exists in this case is plaintiff's § 1983 claim based upon allegations of excessive force pursuant to the Fourth (and possibly Fourteenth) Amendments.

It is well settled that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment

---

1. Officer Patterson first attempted to effect this traffic stop based on an inoperative tail light on McCoy's vehicle.

2. Officer Edwards testified in his deposition that, due to the glare from McCoy's headlights, he was unable to see whether there were passengers in the vehicle.

and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).[3] The court applies a three-part test for § 1983 excessive force claims, requiring a plaintiff to show (1) an injury[4] (2) which resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable. *Goodson v. Corpus Christi*, 202 F.3d 730, 740 (5th Cir.2000).

■ Plaintiff does not allege that any bullet fired by Officer Westbrook struck her; indeed, it appears from plaintiff's testimony that she had exited the vehicle before Westbrook began firing at it. Accordingly, the court concludes that plaintiff suffered no injury at the hands of Westbrook, and her § 1983 claims against this

defendant lack merit. While plaintiff did suffer an injury at the hands of Officer Edwards, the court concludes that plaintiff has failed to establish genuine fact issues regarding any constitutional violation on his part. In so concluding, the court would note that the Fifth Circuit Court of Appeals has demonstrated a marked reluctance to find constitutional violations arising out of actions taken by police officers in circumstances similar to those in the instant case.

In *Reese v. Anderson*, 926 F.2d 494 (5th Cir.1991), for example, the Fifth Circuit held that a police officer was entitled to summary judgment in a § 1983 action where the officer shot and killed an unarmed robbery suspect who had reached down below the seat of his car after being ordered to raise his hands. *Id.* at 500. The Fifth Circuit concluded that "under

---

**3.** It is arguable that plaintiff was not "seized" within the meaning of the Fourth Amendment and that Fourteenth Amendment due process standards should be applicable. Regardless, the Fifth Circuit has acknowledged that its case law has applied largely the same standards in this context, noting that

> we have applied Fourth Amendment standards to excessive force claims that may have in part implicated the due process clause ... a review of Fifth Circuit case law following *Graham* demonstrates a tendency to "blur" the lines between Fourteenth Amendment and either Fourth or Eighth Amendment excessive force standards, depending upon the particular factual context.

*Petta v. Rivera*, 143 F.3d 895, 912 (5th Cir. 1998). The court would note that there is a greater argument that Herman was actually "seized" in this case than in a case involving, for example, an innocent pedestrian bystander injured by a gunshot from an officer. That is, the officers in this case were arguably attempting to "seize" the vehicle in which plaintiff was a passenger, regardless of whether she was actually charged with any offense. The court would also note that, in her brief, plaintiff herself argues in the context of the Fourth Amendment standard.

At any rate, this issue is largely immaterial, given that, in the court's view, plaintiff would

not be able to prevail even if the Fourteenth Amendment standard were applied. That is, Officer Edwards' actions were not "grossly disproportionate to the need for action under the circumstances" and were not "inspired by malice rather than merely careless or unwise excess of zeal" under applicable Fourteenth Amendment authority, *see Petta*, 143 F.3d at 902, for the reasons discussed *infra*.

**4.** Although a showing of "significant injury" is no longer required in the context of an excessive force claim, the Fifth Circuit does require a plaintiff asserting an excessive force claim to have "suffered at least some form of injury." *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999) (*quoting Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir.1993)). The injury must be more than *de minimis* and must be evaluated in the context in which the force was deployed. *Id.* In *Williams*, for example, the Fifth Circuit held that the loss of breath and dizziness suffered when the suspect was allegedly choked while an officer searched his mouth did not amount to an cognizable injury. *Id.* Other than the gunshot wound caused by Edwards, Herman alleges only minor bruising which did not result "directly and only" from any use of unlawful force by Westbrook. *Goodson*, 202 F.3d at 740.

these circumstances, a reasonable officer could well fear for his safety and that of others nearby" and that the officer was thus justified in using deadly force to defend himself and others around him. *Id.* at 501. The Fifth Circuit thus concluded that the officer was entitled to summary judgment as a matter of law.

■ More recently, in *Stroik v. Ponseti,* 35 F.3d 155, 159 (5th Cir.1994) the Fifth Circuit reversed a magistrate judge's refusal to grant summary judgment to an officer who shot a suspect in self-defense. In *Stroik,* the officer stopped a van whose occupants, the officer had reasonable cause to believe, had just committed an armed robbery. *Id.* After the officer came around the rear of the van, he testified without contradiction that a suspect was pointing a gun at him and that he accordingly shot the suspect. *Id.* Under these facts, the Fifth Circuit concluded that the officer had probable cause to believe that the suspect posed a threat of serious physical harm, and that his motion for summary judgment should therefore have been granted. *Id.* In so concluding, the Fifth Circuit approvingly cited the Sixth Circuit decision of *Smith v. Freland,* 954 F.2d 343, 347 (6th Cir.1992) for the proposition that:

we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer

at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

With this authority in mind, the court concludes that Edwards' instantaneous decision to fire at a truck which was coming directly towards him was "objectively reasonable" under the *Graham* Fourth Amendment standard.[5] Plaintiff attempts to minimize the threat faced by Officer Edwards, arguing that "even if one assumes that Officer Edwards' testimony is correct and that Mr. McCoy 'gunned' his pickup truck in an attempt to strike Officer Edwards, Edwards has testified that he was not even struck hard enough to knock him to the ground and that he was not hurt."[6] In the court's view, however, the relevant issue is not the degree of injury actually sustained by Officer Edwards but, rather, whether this officer had probable cause to believe that the suspect posed a threat of serious physical harm to him or others. The evidence supports a conclusion that Edwards reasonably believed that McCoy posed a threat of serious physical harm to him, considering that

5. *See Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 (noting that relevant considerations in determining whether force was unreasonable include "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."). Alternatively, assuming that the Fourteenth Amendment due process standard is applicable, Edwards' actions were not "grossly disproportionate to the need for action under the circumstances" and were not "inspired by malice rather than merely careless or unwise excess of zeal" under applicable Fourteenth Amendment standards. *See Petta,* 143 F.3d at 902.

6. In her deposition, Herman testified that she had the impression that her vehicle was going backwards, as opposed to forward towards Edwards, at the time Edwards fired his shots. However, she conceded that she did not have a clear recollection of these events and that Officer Edwards' recollection may well have been correct. The court concludes that Herman's admittedly unclear recollection of events in this regard does not cast doubt upon the testimony of Officer Edwards that McCoy's vehicle was heading towards him at the time he fired.

McCoy gunned the engine of his vehicle (a potentially deadly weapon) at an armed police officer standing mere feet in front of him. Accordingly, Edwards' actions did not run afoul of relevant constitutional standards, and the court therefore concludes that the motion to dismiss the § 1983 claims against the officers, and also against the City of Shannon, is due to be granted.[7]

The court now turns to plaintiff's state law claims. Unfortunately, the nature of these claims is unclear, in particular with regard to whether plaintiff asserts individual claims against Officers Edwards and Westbrook outside of the scope of the Mississippi Tort Claims Act, Miss.Code Ann. § 11–46–1, et seq (MTCA), or whether, instead, plaintiff seeks to hold the City liable pursuant to the MTCA. Defendants appear to assume in their motion that plaintiff's state law claims are based on the MTCA, given that the sole defense raised by defendants to these claims is based upon the discretionary functions exception to the waiver of liability set forth in Miss. Code Ann. § 11–46–9(1)(d). However, it does not appear that this exception would provide defendants a defense to any MTCA claims asserted by plaintiff, in light of Mississippi Supreme Court case law severely limiting the effectiveness of this provision for defendants. *See, e.g. L.W. v. McComb Separate Municipal School District,* 754 So.2d 1136, 1141 (Miss.1999). At the same time, the court cannot overlook the fact that numerous other obstacles would seemingly exist to any MTCA claims, assuming that plaintiff chose to assert such claims.[8]

At any rate, the applicability of defenses to any MTCA claim appears to be irrelevant in this case, given that plaintiff does not appear to assert an MTCA claim. Indeed, plaintiff makes no mention of the MTCA in her complaint, and she argues in

---

**7.** It is worth noting that, even if plaintiff had been able to establish a constitutional violation on the part of either officer, the City of Shannon would incur no § 1983 liability under the facts of this case. In her complaint, plaintiff seeks to hold the City liable, pursuant to 42 U.S.C. § 1983, for alleged constitutional violations which she allegedly suffered. In the court's view, plaintiff's § 1983 claims against the City would lack merit regardless of the officers' individually liability, inasmuch as plaintiff has failed to produce evidence of any policy or custom on the part of the City which even arguably resulted in the injuries which she suffered. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Moreover, plaintiff's allegations that her injuries were proximately caused by the City's alleged failure to properly train its officers likewise fail to meet the stringent proof requirements established by relevant United States Supreme Court authority. *See Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). It is apparent that plaintiff seeks to hold the City vicariously liable for its officers' alleged misconduct, but such is clearly improper under § 1983. Plaintiff must, rather, establish that the City's own actions, either through its policy, custom or failure to train, proximately caused her injuries, and plaintiff has failed to meet this heavy burden.

It is also worth noting that Edwards is protected by the doctrine of qualified immunity in this case, given that his conduct was, for the reasons stated previously, "objectively reasonable in the light of the clearly established law at the time of the incident." *Hare v. City of Corinth,* 135 F.3d 320, 325 (5th Cir.1998).

**8.** The obstacles include the notice of claim and one-year statute of limitations provisions set forth in Miss.Code Ann. § 11–46–11. It seems clear that plaintiff did not file suit within one year of the incident, although defendants do not raise a statute of limitations defense in their motion. It is unclear whether plaintiff submitted a notice of claim prior to filing suit. Another obstacle to any MTCA claim is the limitation upon claims arising out of police action set forth in § 11–46–9(1)(c). The court will not analyze these issues, given that it does not appear that plaintiff even intends to assert claims under the MTCA.

her brief that she has the right to assert pendent state law claims outside of the scope of the MTCA, thus suggesting that she has done so in this case. The court will therefore assume that plaintiff's state law claims are asserted outside of the scope of the MTCA. However, under Mississippi law, plaintiff may only assert state law claims outside the scope of the MTCA against the individual officers (as opposed to the City), and only if the officers' alleged misconduct is deemed to fall outside the scope and course of their employment. In this regard, Miss.Code Ann. § 11–46–7(2) provides as follows:

> (2) An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

Plaintiff's complaint asserts state law claims of "assault, battery, aggravated assault, false arrest, false imprisonment and intentional infliction of emotional distress." None of these claims allege misconduct occurring outside the scope of employment within the meaning of § 11–46–7(2).[9] To the contrary, it is clear that the officers' actions did fall within the course and scope of employment, and any recourse by plaintiff under state law based on these actions would necessarily be against the city pursuant to the MTCA. Given that plaintiff does not appear to assert any MTCA claims (and seemingly could not do so legally), it necessarily follows that the state law claims asserted by plaintiff are due to be dismissed.[10]

In light of the foregoing, it is ordered that defendants' motion for summary judgment is granted.

---

**9.** Moreover, even if these claims could somehow be brought outside the scope of the MTCA, it appears that most if not all of them would be subject to the one-year statute of limitations applicable to intentional torts. *See* Miss.Code Ann. § 15–1–35. Finally, regardless of the legal context of plaintiff's state law claims, it seems highly doubtful that she could prevail on any of them in light of the court's previously stated conclusion that Officer Edwards acted reasonably in firing upon McCoy's vehicle.

**10.** The court recognizes that it has dismissed plaintiff's state law claims based partly on

arguments raised on its own motion and to which plaintiff had no opportunity to respond. For this reason, the court will withhold issuance of any judgment of dismissal until plaintiff has had an opportunity to submit, if she so elects, a motion to reconsider the court's ruling. If plaintiff elects to submit such a motion, she should explain whether her state law claims are brought pursuant to, or outside of, the scope of the MTCA, and she should further explain why those claims would not be barred, based on the concerns expressed in this opinion.