# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 5, 2007**

Charles R. Fulbruge III
Clerk

No. 05-20687

DALE KEITH PAYNE,

Plaintiff – Appellant,

v.

JIMMY PARNELL, Correctional Officer; TERRY PICKETT,
Captain; BRIAN BUCK, Captain; PRISCILLA DALY,
Grievance Officer; RICHARD THALER, Warden,

Defendants – Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. H-03-4294

Before KING, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Dale Keith Payne, Texas prisoner #594370, filed this civil rights action under 42 U.S.C. § 1983 against prison officers Jimmy Parnell, Terry Pickett, Brian Buck, Priscilla Daly, and Richard Thaler. Payne claimed that Parnell violated the Eighth Amendment by subjecting him to excessive force with a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

cattle prod and threatening him with a knife, and that Pickett, Buck, Daly,[1] and Thaler did so by failing to supervise Parnell, protect Payne from Parnell, and investigate the matter adequately. The district court granted summary judgment in favor of all defendants, and Payne now appeals. As to the excessive force claim against Parnell based on the cattle prod incident, we VACATE the summary judgment dismissal and REMAND for further proceedings; in all other respects we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of an altercation between Texas inmate Dale Keith Payne and corrections officer Jimmy Parnell. In October of 2002, Payne was working at his prison job at the back gate of the Estelle Unit. A horticulture truck had just entered the back gate area, and Payne raised the truck's hood to allow it to be to be searched by a guard. While Payne was in this position Parnell approached him from the rear and, without provocation, shocked him in the back with a cattle prod that he had found in the truck's cab. The shock from the cattle prod produced a painful reaction in Payne, causing him to "jump[] and holler[]," and left a mark on Payne's back. Parnell then chased Payne around a nearby office building in an attempt to shock him again. Payne sought refuge in a bathroom, at which point Parnell attempted to shock him through the door of the bathroom by using the door handle to transmit the electricity from the cattle prod. After a later incident in which Parnell allegedly threatened Payne with a knife, Payne reported both incidents to Terry Pickett, a security captain. Payne also filed a grievance against Parnell. Defendants Brian Buck and Richard Thaler were involved in the grievance process as security captain and warden, respectively.

---

[1] Payne named Daly as a defendant in his initial complaint, but a summons was apparently never issued for her.

The matter was subsequently referred to the Texas Department of Criminal Justice (TDCJ) Office of the Inspector General (OIG), which is independent of the normal TDCJ chain of command. When first interviewed by an OIG investigator, Parnell denied that he had shocked Payne with a cattle prod at all. Payne and another inmate who witnessed the incident were then subjected to polygraph examinations, which they both passed. The investigator also obtained a statement from a guard who had witnessed the incident and confirmed that Parnell touched Payne with a cattle prod. After being informed of these developments, Parnell admitted that Payne's allegations concerning the cattle prod were true. In a written statement, he explained that he "did touch offender Payne with [a cattle prod] in a joking manner and did not know it would shock him." Parnell also admitted to having a knife in the back gate area, but he said he never threatened Payne with it. The OIG report concluded that in shocking Payne with the cattle prod, Parnell committed "reckless conduct" in violation of a prison personnel rule. Parnell was suspended for two days without pay and placed on probation for ninety days. The investigation found insufficient evidence to support Payne's allegation that Parnell threatened him with a knife.

Payne then brought this § 1983 suit, claiming that Parnell's actions and threats constituted the use of excessive force against him in violation of the Eighth Amendment. Pickett, Buck, and Thaler were joined as defendants on the theory that they failed to supervise Parnell, protect Payne from Parnell, and investigate the grievance against Parnell adequately. The district court granted summary judgment in favor of the defendants and dismissed the case. Payne appeals the grant of summary judgment, and also argues that the district court abused its discretion in denying his request for appointed counsel, refusing to

allow him to amend his complaint, and failing to conduct a hearing pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).[2]

## II. DISCUSSION

### A.    Standard of Review

We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.  See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).  "Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law."  Id. (citing FED. R. CIV. P. 56(c)).  "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

### B.    Payne's Excessive Force Claim Against Parnell

"[T]he settled rule [is] that 'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'"  Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  In the context of an allegation of the use of excessive force by a prison official, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 7.  "In determining whether the use of force [by a prison guard] was wanton and unnecessary," the court considers "the extent of [the] injury suffered," "the need for [the] application of force, the

---

[2] Although Payne refers in passing to his claim that Parnell threatened him with a knife, his brief contains no argument relating to this issue.  We do not construe his brief as pursuing this claim on appeal.  See Yohey v. Collins, 985 F.2d 222, 224–24 (5th Cir. 1993) (although pro se briefs are liberally construed, arguments must be briefed to be preserved for appeal).

relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (citing Whitley, 475 U.S. at 321) (internal quotation marks omitted).

The Supreme Court has recognized that the Eighth Amendment includes an "objective component": in considering a prisoner's claim, the court must ask "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The objective component of the Eighth Amendment is "contextual," id.; whereas a conditions-of-confinement claim requires "extreme deprivations" to be cognizable, in the excessive-force context, "[w]hen prison officials maliciously and sadistically use force to cause harm," the Eighth Amendment is violated "whether or not significant injury is evident." Id. at 9. "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." Id. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9–10 (quoting Whitley, 475 U.S. at 327).

We first consider whether Payne has demonstrated the existence of a fact issue on the question of whether Parnell applied the electric shock from the cattle prod "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." See id. at 7. The district court concluded that Parnell was entitled to summary judgment because it determined that he was acting "jokingly," or in "horseplay," and did not know the cattle prod was charged. We conclude, however, that a reasonable jury could determine that Parnell acted maliciously and sadistically in unnecessarily and wantonly inflicting pain on Payne.

When the cattle prod incident occurred, Payne was merely working at his prison job; there is no allegation that he caused any disruption or in any way violated a prison rule. He was facing away from Parnell and, in the process of raising and supporting the truck's hood, was in a relatively vulnerable position. He did nothing to provoke Parnell's actions, and there is no evidence that Parnell had any reason to reasonably perceive a threat from Payne. Consequently, a rational jury could find that there was no need for the application of any force in this situation, much less the amount of force actually administered, an electric shock from a cattle prod.

Furthermore, assuming arguendo that Payne may not proceed if Parnell was acting "jokingly," or in "horseplay," and did not know the cattle prod was charged when he delivered the electric shock, there is sufficient circumstantial evidence in the record from which a reasonable jury could disbelieve this explanation. After Parnell delivered the initial shock, he chased Payne around a building and into a bathroom in an effort to shock him further. Additionally, Payne submitted an affidavit from another inmate, who was also interviewed by the OIG investigator and given a polygraph examination, that detailed other occasions when Parnell had struck Payne unnecessarily. This evidence substantiates Payne's allegations that he had been subjected to a history of abuse and harassment at the hands of Parnell prior to the cattle prod incident, and supports an inference that Parnell intended to harm Payne. Finally, Parnell initially lied about the incident by denying that it had ever occurred; only when informed that another guard had witnessed it and that Payne and the other inmate had passed polygraphs did Parnell tell the investigator that he had in fact shocked Payne, but "only in a joking manner." On this record, a rational jury could determine that in shocking Payne, Parnell acted maliciously and sadistically to cause harm.

The more difficult issue is whether the alleged wrongdoing in this case was objectively "harmful enough" to establish a constitutional violation. See Hudson, 503 U.S. at 8. To support an excessive force claim, a prisoner "must have suffered from the excessive force a more than de minimis physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor."[3] Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999). "In determining whether an injury caused by excessive force is more than de minimis, we look to the context in which that force was deployed." Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999). "[T]he amount of injury necessary to satisfy our requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances." Id. at 703–04 (quoting Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir. 1996)). Payne received an electric shock from a cattle prod, which caused an immediate sensation of pain and left a mark on his back. The district court determined that his injury from the cattle prod was de minimis. We disagree.

Relying on Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997), the defendants argue that Payne can not show a physical injury sufficient to support his excessive force claim. In Siglar, the prisoner was stopped in the hall of his prison unit while returning from breakfast. 112 F.3d at 193. The guard found a biscuit in the prisoner's jacket pocket and called for backup. Id. The responding guard, "[w]ithout provocation, . . . twisted Siglar's arm behind his back and twisted Siglar's ear." Id. "Siglar's ear was bruised and sore for three days but he did not seek or receive medical treatment for any physical injury

---

[3] We have also recognized the possibility under Hudson that even a de minimis physical injury may be sufficient for Eighth Amendment purposes if the force used is "of a sort repugnant to the conscience of mankind." See Gomez, 163 F.3d at 324 n.4. Since we conclude that the use of force here was not de minimis, we need not resolve the question of whether the use of a cattle prod on a prisoner is force "of a sort repugnant to the conscience of mankind."

resulting from the incident." Id. We affirmed the dismissal of his complaint, concluding that he had not suffered a "physical injury" under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), because his injury was de minimis under the Eighth Amendment. Id. at 193–94. The defendants contend that Payne's injuries from the cattle prod shock likewise did not result in long-term damage requiring medical treatment. It is clear, however, that the lack of any long-term damage is not dispositive on the question of whether Payne's injury was de minimis. In Gomez, for example, in concluding that a prisoner's injury was not de minimis, we distinguished Siglar not only on the extent of the physical injury that actually resulted, but also on the fact that the "application of force" was "of a character far [more] intense and [more] calculated to produce real physical harm," Gomez, 163 F.3d at 924, as it was here.

Moreover, we have made it clear that the amount of injury required "is directly related to the amount of force that is constitutionally permissible under the circumstances." Williams, 180 F.3d at 704 (internal citations and quotations omitted). In Williams, an individual detained by police officers brought an excessive force claim against an officer who allegedly choked him twice, once in the course of a search of the plaintiff's mouth and once shortly thereafter in response to his complaining about the first choking.[4] Id. at 703. The plaintiff's alleged injuries from each choking were identical: "fleeting dizziness, temporary loss of breath and coughing." Id. at 704. Since "[i]n determining whether an injury caused by excessive force is more than de minimis, we look to the context in which the force was deployed," id. at 703, we evaluated each injury separately.

---

[4] The claim in Williams was based on the Fourth Amendment, but the analysis in that case is relevant here because a claim of excessive force by a law enforcement officer is analyzed under the same standard regardless of whether it arises under the Fourth Amendment or the Eighth Amendment. See Ikerd, 101 F.3d at 434 n.9 ("[A]ny force exerted by a law enforcement officer that would be objectively reasonable under [the Fourth Amendment] would also be de minimis under Hudson. Similarly, any force that would be objectively unreasonable under [the Fourth Amendment] would not fall within the de minimis language in Hudson.").

We determined that the injuries resulting from the first choking were not constitutionally cognizable because they occurred during a search of the plaintiff's mouth for drugs. Id. at 704. With respect to the second choking, however, identical injuries were more than de minimis, because the second choking "was motivated entirely by malice" and because the officer was not "legitimately exercising force in the performance of his duties as an officer." Id.

We think the facts of Payne's case are more akin to Williams than Siglar. The application of the electric shock from the cattle prod was at least as serious as the choking that caused "fleeting dizziness, temporary loss of breath and coughing" in Williams. Additionally, unlike in Siglar, where the prisoner was found with contraband, there is no evidence that Payne was violating any prison rule or that any use of force was necessary. We conclude that the deliberate, unnecessary application of an electric shock from a cattle prod in this case resulted in more than de minimis injuries. Cf. Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) ("Deliberately inflicted pain, as with an electric cattle prod, does not become unimportant and unactionable under the eighth amendment simply because the pain produced is only momentary.").

C.    Payne's Claims Against Pickett, Buck, and Thaler

The district court granted summary judgment against Payne on his claims that Pickett, Buck, and Thaler failed to supervise Parnell, protect Payne from Parnell, and investigate the matter adequately. We conclude that the grant of summary judgment on these claims was proper.

To hold a supervisory official liable for the acts of a subordinate, Payne must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911–12 (5th Cir. 1998). To state a failure to protect claim under § 1983,

Payne must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995). For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The record in this case contains affidavits from Pickett, Buck, and Thaler stating that they were unaware of any substantial risk posed to Payne by Parnell prior to the incidents in question, and that once informed they took appropriate action, which ultimately led to the investigation conducted by the OIG. Payne has not put forward any evidence to controvert the defendants' affidavits; indeed, his own pleadings indicate that he did not inform prison officials of his problems with Parnell until after the second incident. Summary judgment was therefore appropriate, as no genuine issue of material fact relating to the alleged deliberate indifference of Pickett, Buck, and Thaler is evident from the record.[5]

D.    Other Issues

Payne also argues that the district court abused its discretion in denying his request for appointed counsel, failing to allow him to amend his complaint, and refusing to conduct a Spears hearing.

A court is not required to appoint counsel to an indigent plaintiff in a § 1983 case unless there are exceptional circumstances. Ulmer v. Chancellor, 691 F.2d 209, 212 (5th Cir. 1982). Factors to consider in ruling on a request for

---

[5] Insofar as Payne asserts an alleged violation of due process in the prison grievance process, the district court did not err in determining that Payne had no legal interest in having the dispute resolved to his satisfaction. See Geiger v. Jowers, 404 F.3d 471, 373–74 (5th Cir. 2005). The record also indicates that an investigation was conducted, and that Parnell was subsequently disciplined.

appointment of counsel include: (1) the type and complexity of the case; (2) the indigent's ability to adequately investigate and present the case; (3) the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and (4) the likelihood that appointment of counsel will benefit the parties and the court. Parker v. Carpenter, 978 F.2d 190, 193 (5th Cir. 1992); see Ulmer, 691 F.2d at 213. Although the record does contain conflicting testimony as to Parnell's intentions in shocking Payne, at the summary judgment stage concerns about effective cross-examination have not yet been implicated, and as the facts of this case are not unusually complex, Payne's presentation has to this point been adequate. The district court thus did not abuse its discretion in denying appointment of counsel.[6]

With regard to the argument that the district court abused its discretion in not allowing an amendment to his complaint prior to the filing of the defendants' motion for summary judgment, Payne has failed to show any error; the record contains no indication that he attempted to amend his complaint, or that any amendment was improperly refused.

Finally, Payne argues that the district court should have conducted a Spears hearing, which is a device that allows the court to remedy any factual or legal inadequacies in a prisoner's pleadings. See Eason v. Thaler, 14 F.3d 8, 9 (5th Cir. 1994). To determine whether the district court abused its discretion in failing to hold a Spears hearing, we first inquire if any insufficiencies in Payne's allegations might have been remedied with the opportunity for additional factual development. Id. Payne's initial complaint adequately outlined the factual bases for his claims, and he also had an opportunity to respond to the

---

[6] We express no opinion regarding whether on remand Payne should have counsel appointed to assist him in further pursuing his § 1983 claim relating to the cattle prod incident.

defendants' motion for summary judgment. On appeal he has not identified any additional facts that he would have presented at a Spears hearing; the averments in his brief and reply brief largely mirror information already contained within the record that was available at summary judgment. The district court did not abuse its discretion in failing to hold a Spears hearing.

## III. Conclusion

We VACATE the grant of summary judgment with respect to Payne's excessive force claim against Parnell based on the cattle prod incident and REMAND for further proceedings; in all other respects the judgment of the district court is AFFIRMED.