[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10798
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 27, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-03269-ODE

ARTHUR L. BRIMS,

Plaintiff-Appellant,

versus

POLICE OFFICER N. BARLOW,
Badge #1411,

Defendant-Appellee,

COBB COUNTY POLICE DEPT.,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 27, 2011)

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

Arthur Brims, proceeding *pro se*, appeals the district court's order granting summary judgment in favor of the defendant, Officer Nathaniel Barlow, in Brims's civil rights action brought under 42 U.S.C. § 1983. On appeal, Brims argues that the district court should not have granted summary judgment to Barlow because the evidence established that Barlow violated his Fourth Amendment rights. For the reasons stated below, we affirm.

I.

In 2009, Brims filed a *pro se* § 1983 complaint against Barlow. His complaint was based on the following facts. On May 30, 2009, Brims was waiting in his vehicle at a shopping plaza when he noticed a police car pull up behind him. Barlow got out of the police car, walked to Brims's vehicle, and informed Brims that his registration had expired. In response, Brims handed Barlow a letter from the Georgia Department of Motor Vehicles demonstrating that his car was validly registered. Barlow then "put his hands on [Brims] in an assaultive manner," pulled him out of his vehicle, and used a racial epithet. Barlow handcuffed Brims "for no reason" and searched Brims's vehicle without his consent.

Barlow filed a motion for summary judgment. He argued that his search of Brims's vehicle was lawful under the automobile exception to the Fourth Amendment's warrant requirement. He stated that he had probable cause to search

2

Brims's vehicle because he had noticed Brims reaching from one side of the vehicle to the other as though he were trying to hide contraband or to secure or conceal a weapon. Barlow further explained that he had probable cause to arrest Brims for a controlled substance violation because he found a crack pipe with cocaine residue on the front seat of Brims's vehicle.

In a supporting affidavit, Barlow explained that, on May 30, 2009, at 5:30 pm, he was traveling in his patrol car when he observed a vehicle being driven with a suspended registration. After the vehicle pulled into a parking lot, Barlow initiated a traffic stop. Barlow approached the vehicle and informed the driver, Brims, that his vehicle's registration was expired. As Brims searched for his registration, Barlow returned to his police cruiser and checked a police database to confirm that Brims's registration had expired.

While Barlow was in his patrol car, he noticed Brims moving about and reaching from one side of his vehicle to another. He believed, based on his training and experience, that Brims may have been trying to conceal contraband or to obtain a weapon. Barlow called for backup and motioned for Brims to get out of his vehicle. Barlow searched the driver's compartment of Brims's vehicle and discovered a glass pipe with crack cocaine residue. At that point, Barlow handcuffed Brims without using any appreciable force.

3

In addition to his affidavit, Barlow submitted a video recording of the traffic stop taken by the camera in his patrol car. Barlow explained that the videotape was not perfect because the audio recording was intermittent and the time on the screen did not reflect the actual time. Nevertheless, he asserted that the videotape accurately depicted his encounter with Brims. He stated that the videotape had been converted from VHS format into a DVD, but had not been altered in any other way.

The videotape largely corroborates Barlow's account of the traffic stop. The recording begins at 5:43 pm, as Barlow and Brims are standing near Brims's vehicle. Brims reenters his vehicle to look for his registration. At 5:46, Brims hands a paper to Barlow, and Barlow returns to his patrol car. At 5:47, Barlow walks back to Brims's vehicle. He motions for Brims to get out, and Brims complies. Barlow performs a pat-down search of Brims's person and then searches the driver's compartment of the vehicle, discovering the pipe with crack cocaine. At 5:51, another officer arrives on the scene. Barlow handcuffs Brims without using any appreciable force, and the officers walk Brims back to Barlow's patrol car. At no point during the videotape does Barlow hit or strike Brims.

Brims filed a response to Barlow's summary judgment motion. Among other things, Brims argued that the videotape of the traffic stop was not reliable

4

because the initial traffic stop occurred at 5:30 pm, but the videotape did not begin recording until 5:43 pm. He maintained that the videotape had been altered to Barlow's advantage.

The district court granted Barlow's motion for summary judgment. As an initial matter, the court explained that it would credit the videotape over any contrary assertions made by Barlow. The district court explained that Brims's conclusory assertion that the videotape had been altered did not create a genuine issue as to its reliability because Brims had not explained how the events depicted on the tape differed from what actually happened.

The district court observed that the encounter between Brims and Barlow undisputably began as a traffic stop while Brims was driving a car with a recently lapsed registration. The district court noted that the videotape corroborated Barlow's contention that Brims had been moving around inside of his vehicle. The court observed that Barlow had reason to believe that Brims had hidden contraband or secured a weapon. The district court concluded that Barlow had conducted a lawful investigatory stop, search, and arrest. The district court also determined that Barlow was entitled to qualified immunity even if the search had not been lawful.

II.

We review a district court's grant of summary judgment *de novo*. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Generally, we must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Mann*, 588 F.3d at 1303. We may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). In *Scott,* the Supreme Court credited a videotape recording of a car chase rather than the plaintiff's contrary account of what occurred. *Id.* at 378-81, 127 S.Ct. at 1775-76.

The doctrine of qualified immunity shields government officials sued in their individual capacities from civil liability if their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The qualified immunity analysis consists of two steps. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010). First, we must consider whether the plaintiff has established a constitutional violation. *Id.* Second, we must determine whether the right at issue was "clearly

6

established" at the time of the official's action. *Id.* We may address those two steps in whatever order we deem most appropriate. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

In this case, much of the encounter between Brims and Barlow was captured by the video camera in Barlow's patrol car. In the proceedings below, Brims argued that the videotape was not reliable evidence because the traffic stop began at 5:30 pm and the video camera did not begin recording until 5:43. As Barlow explained, however, the time displayed on the video recording does not reflect the "actual time." Also, Brims did not specifically describe how the events depicted on the videotape differed from what actually occurred. Therefore, the district court appropriately concluded that Brims had not raised a genuine issue of material fact as to the accuracy of the videotape. To the extent that the videotape contradicts Brims's version of the facts, we must accept the videotape as accurate and reject Brims's contrary statements. *See Scott*, 550 U.S. at 378-81, 127 S.Ct. at 1775-76.

Brims failed to establish that Barlow's actions during the traffic stop violated the Fourth Amendment. First, the initial stop of Brims's vehicle was lawful because Barlow had reason to believe that the registration for Brims's vehicle had been suspended. The fact that Brims later may have been able to

7

produce a letter showing his registration to be valid is irrelevant—the issue is whether Barlow had reason to believe that Brims's registration was suspended at the time when he initiated the traffic stop. Because Brims did not dispute that his registration was listed as being suspended in the police database, the district court properly concluded that the initial stop of Brims's vehicle was lawful.

As Barlow was checking Brims's registration, he noticed Brims moving around and reaching from one side of his vehicle to the other. Brims has not disputed that he was moving around in his vehicle. Based on his training and experience, Barlow believed that Brims may have been trying to secure a weapon. At that point, it was lawful for Barlow to conduct a pat-down search of Brims's person and to search Brims's vehicle to ensure that Brims did not pose a threat to his safety. *See Arizona v. Johnson*, 555 U.S. 323, ___, 129 S.Ct. 781, 784, 172 L.Ed.2d 694 (2009) (holding that officers performing a traffic stop may conduct a pat-down search of any passenger whom they reasonably suspect to be armed and dangerous); *Michigan v. Long*, 463 U.S. 1032, 1051, 103 S.Ct. 3469, 3482, 77 L.Ed.2d 1201 (1983) (explaining that officers may search a vehicle during a traffic stop if they have "an articulable and objectively reasonable belief that the suspect is potentially dangerous" ). Brims's speculation that Barlow would have drawn his service revolver or waited for backup if he had truly feared for his safety were

8

insufficient to create a genuine issue as to whether the search of his vehicle was lawful.

During his search of Brims's vehicle, Barlow discovered a glass pipe with crack cocaine. Therefore, he had probable cause to arrest Barlow for a controlled substance violation. Finally, the videotape shows that Barlow did not hit or strike Brims, nor did he use excessive force when he placed Brims in handcuffs

In his complaint, Brims also asserted that Barlow used a racial epithet while placing him under arrest. That contention is not directly contradicted by the videotape because the relevant portion of the videotape does not have any accompanying audio recording. Nevertheless, the isolated use of a racial epithet, while deplorable, does not rise to the level of a constitutional violation unless it is accompanied by other harassment or misconduct. *See Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999) (holding that "an officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation"); *Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (same). Here, even if one were to accept Brims's contention that Barlow used a racial epithet, Brims has not established that Barlow engaged in any other misconduct. Therefore, to the extent that Brims was attempting to bring a separate equal protection claim, that claim is meritless.

9

Because Brims failed to establish a constitutional violation, Barlow was entitled to qualified immunity. *See Grider*, 618 F.3d at 1254. Accordingly, we affirm the district court's grant of summary judgment.

**AFFIRMED.**